*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CF-87

JAMAL RANDELL SOLOMON, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF2-16-13)

(Hon. Ronna Lee Beck, Trial Judge)

(Submitted March 31, 2015                    Decided July 23, 2015)

*Ian A. Williams* was on the brief for appellant.

*Ronald C. Machen Jr.*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Laura Coates*, and *Stratton C. Strand*, Assistant United States Attorneys, were on the brief for appellee.

Before FISHER and BLACKBURNE-RIGSBY, *Associate Judges*, and KING, *Senior Judge*.

FISHER, *Associate Judge*:  The District's unlawful possession of a firearm ("UPF") statute prohibits any person who has been convicted of a crime punishable by imprisonment for a term exceeding one year from possessing a firearm. D.C. Code § 22-4503 (a)(1) (2012 Repl.).  A recent amendment to the Youth

Rehabilitation Amendment Act of 1985 ("Youth Act") extended this prohibition to persons whose convictions have been set aside under the Youth Act. D.C. Code § 24-906 (f)(8) (2012 Repl.). After this amendment took effect, Jamal Solomon was arrested for and convicted of UPF; his prior conviction for unauthorized use of a vehicle ("UUV"), D.C. Code § 22-3215 (b), (d) (2001), which had been set aside pursuant to the Youth Act, served as the predicate felony. Because his UUV conviction had been set aside before § 24-906 (f)(8) was enacted, Solomon contends that, as applied to him, the provision violates the *Ex Post Facto* Clause of the Constitution. *See* U.S. Const. art. I, § 9, cl. 3. We affirm.

## I.     Factual and Procedural History

On January 3, 2008, Solomon pled guilty to one count of UUV. Under the Youth Act, the trial court sentenced him to a term of imprisonment but suspended execution of that sentence, placing him on supervised probation. After finding that Solomon had successfully completed the conditions of his probation, on July 16, 2009, the court ordered that he "be unconditionally discharged from the imposed sentence" and set aside his conviction.

In 2011, the Council of the District of Columbia amended the Youth Act, expressly permitting a set-aside conviction to serve as a predicate crime for UPF. D.C. Code § 24-906 (f)(8) ("A conviction set aside under this section may be used . . . [i]n determining whether a person has been in possession of a firearm in violation of [the UPF statute]."). After his arrest on January 1, 2013, Solomon was charged with firearm-related crimes, including one count of UPF. Solomon moved to dismiss the UPF charge on *ex post facto* grounds, but the trial court denied his motion. A jury trial ensued, and appellant was found guilty of UPF and possession of an unregistered firearm.

## II. The Youth Act Amendment

Solomon contends that the 2011 amendment to the Youth Act retroactively: (1) redefined his past "legally innocent" conduct—his set aside UUV conviction— as an element of a crime, (2) reinstated his exposure to punishment for his UUV conviction, and (3) transformed the UUV conviction from an event with no evidentiary value to proof of an element of a crime. "We review this constitutional law question *de novo*." *Jones v. United States*, 719 A.2d 92, 93 (D.C. 1998) (referring to claim of *ex post facto* violation).

## A. The *Ex Post Facto* Clause

"[A] law violative of the *ex post facto* clause may be identified by two critical elements; it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Dean v. United States*, 938 A.2d 751, 770 (D.C. 2007) (citation omitted). However, "every retrospective law is not an *ex post facto* law," *Calder v. Bull*, 3 U.S. 386, 391 (1798) (emphasis added), and "[n]ot all changes in law which are disadvantageous to a defendant violate the *Ex Post Facto* Clause," *Thomas v. United States*, 50 A.3d 458, 465 (D.C. 2012).

"*Ex post facto* law" is a term of art limited to the following four categories of laws: "1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender." *Calder*, 3 U.S. at 390; *see Collins v. Youngblood*, 497 U.S.

37, 41-52 (1990) (the four types of laws identified in *Calder* are an exhaustive list of *ex post facto* laws).

## B. The Amendment Is Prospective

The Youth Act amendment applies to offenders who committed their predicate crimes both prior to and after its enactment. However, the former youth offender is not exposed to criminal liability unless he possesses a firearm after the effective date of the amendment. The amendment therefore operates prospectively, giving youth offenders whose convictions were set aside fair warning of the UPF statute's expanded proscription. *See Carmell v. Texas*, 529 U.S. 513, 566 (2000) ("The *Ex Post Facto* Clause . . . serves to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." (citation omitted)). In this case, Solomon received constructive notice that he was not to possess a firearm as of June 3, 2011, the amendment's effective date. In spite of this notice, he chose to possess a firearm on January 1, 2013, and was thereafter prosecuted for his post-amendment conduct.

Notwithstanding this fair warning, Solomon contends that the setting aside of his UUV conviction constituted official assurance that his prior conviction was "forgiven" and therefore could not be used against him in the future to prove an element of UPF. We disagree. The set-aside did not in any sense "forgive" his past conduct. It was not a pardon. Moreover, at the time he pled guilty to UUV, Solomon knew or should have known that a set-aside conviction could be used to his detriment for a variety of purposes, including to determine whether he had committed a second or subsequent offense for purposes of imposing a recidivist penalty, to determine the appropriate sentence for any subsequent crime, and for impeachment purposes. *See* D.C. Code § 24-906 (f)(1)-(6) (effective June 8, 2001). Because a set-aside conviction could already be used as a "prior" conviction for purposes of a subsequent offense, the Council likewise determined that it could serve as a "prior" conviction under the UPF statute. D.C. Council, Report on Bill 18-963 at 8 (Dec. 1, 2010).

When his conviction was set aside, Solomon had no legitimate, or enforceable, expectation that the Council, in its legislative discretion, would not change the law in a way that restricted his future conduct. *See Cases v. United States*, 131 F.2d 916, 921 (1st Cir. 1942) (legislature may, without offending the prohibition against *ex post facto* laws, restrict an individual's right to engage in

future activity because of his past conduct, so long as the past conduct can reasonably be said to indicate unfitness to engage in the future activity); *Jordan v. State*, 56 S.W.3d 326, 332 (Tex. App. 2001) (legislature did not violate the *Ex Post Facto* Clause when it amended an existing felon-in-possession statute, which applied exclusively to persons convicted of violent felonies, to also prohibit any person convicted of a non-violent felony from possessing a firearm).

Regardless of whether Solomon's prior conviction was "forgiven" for some purposes,[1] the Council retained the right to enact a new forward-looking law establishing a new crime or revising an existing one. *See United States v. Brady*, 26 F.3d 282, 291 (2d Cir. 1994) (no *ex post facto* violation where felon possessed a firearm in contravention of a felon-in-possession statute, even though his felony conviction preceded enactment of the statute); *State v. Banta*, 544 A.2d 1226, 1238 (Conn. 1988) (felon-in-possession statute was not an *ex post facto* law; although

---

[1] The purpose of the Youth Act "is to provide rehabilitation opportunities for deserving young adult offenders between the ages of 18 and 22." D.C. Council, Report on Bill 6-47 at 2 (June 19, 1985). The Act's set-aside provision "allows a successfully rehabilitated individual to start anew without the stigma of a conviction." D.C. Council, Report on Bill 18-963 at 8 (Dec. 1, 2010). It, for example, gives a former youth offender "the right to lawfully state on an application for school or employment that he/she has not been *convicted* of a crime." *Id.* at 7.

the defendant's prior conviction preceded the enactment of the statute, the criminalized conduct—his possession of a pistol—did not).

## C. The Amendment Does Not Fit Within the *Calder* Categories

Even assuming that the Youth Act amendment operates retroactively by enlarging the uses that may be made of a set-aside conviction, Solomon has nevertheless failed to demonstrate that it disadvantages him in a manner prohibited by the *Calder* categories. It did not "make[] an action, done before the passing of the law, and which was innocent when done, criminal." *Calder*, 3 U.S. at 390. Solomon possessed the firearm after the 2011 amendment and, although he committed and was convicted of UUV before the amendment, his unauthorized use of a vehicle was not "innocent when done." *See* D.C. Code § 22-3215 (b) (prohibiting unauthorized use of a vehicle). That his conviction was eventually set aside does not change our analysis. A set-aside does not amount to an acquittal, nor does it "alter the fact of conviction"; it merely "shields it from public view and effect." *Lindsay v. United States*, 520 A.2d 1059, 1063 (D.C. 1987).

Nor does the amendment "aggravate[] a crime, or make[] it greater than it was, when committed," or "inflict[] a greater punishment, than the law annexed to

the crime, when committed." *Calder*, 3 U.S. at 390. In arguing to the contrary, appellant mistakenly asserts that § 24-906 (f)(8) inflicted additional punishment for his set-aside UUV conviction. *See Stogner v. California*, 539 U.S. 607, 613 (2003) (defining the second *Calder* category as a statute that inflicts punishment where the party was not, by law, liable to any punishment); *Garner v. Jones*, 529 U.S. 244, 249-50 (2000) (defining the third *Calder* category as barring "enactments which, by retroactive operation, increase the punishment for a crime after its commission"). However, the Youth Act amendment does not impose punishment for the offense underlying a set-aside conviction; instead, it imposes a forward-looking firearms restriction on a class of former youth offenders. Because Solomon chose to possess a firearm, in contravention of this restriction, he was prosecuted and punished for his post-enactment conduct—not for his UUV.

Lastly, because the Youth Act amendment preceded Solomon's possession of a firearm, it simply could not have altered or changed the evidence required to convict *at the time of the offense*. *See Calder v. Bull*, 3 U.S. at 390. The burden of proof and evidentiary standards at the time of the UPF offense remained the same through the time of prosecution. In a sense, perhaps, the Youth Act amendment did "transform" Solomon's UUV conviction from an event with no evidentiary value to proof sufficient to establish an element of a crime. However, doing so did

not run afoul of the *Ex Post Facto* Clause because, as stated above, legislatures are permitted to impose future restrictions due to past behavior.

Because the 2011 amendment to the Youth Act neither operates retroactively nor otherwise fits within the *Calder* categories, applying it to appellant did not violate the *Ex Post Facto* Clause. The trial court, therefore, properly denied Solomon's motion to dismiss the UPF charge.

### III. Conclusion

The judgment of the Superior Court is

*Affirmed.*