*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 24-CO-0321

RILEY S. WALLS, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(1994-FEL-001788)

(Hon. Heidi M. Pasichow, Trial Judge)

(Argued November 13, 2024                    Decided July 31, 2025)

*Peter H. Meyers* for appellant.

*Dylan M. Aluise*, Assistant United States Attorney, with whom *Matthew M. Graves*, United States Attorney at the time the brief was filed, and *Chrisellen R. Kolb*, *Elizabeth H. Danello*, and *Amanda Williams*, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, DEAHL, *Associate Judge*, and WASHINGTON, *Senior Judge*.

DEAHL, *Associate Judge*: When Riley S. Walls was eighteen years old, he committed first-degree murder, assault with intent to kill, and possession of a firearm

during a crime of violence. He received three consecutive sentences for these offenses that left him with an indeterminate sentence of forty-five years to life.

Now in his 50s, Walls is seeking a sentence reduction under the Incarceration Reduction Amendment Act (IRAA), effectively asking for his immediate release. To obtain IRAA relief, movants must demonstrate that they are no longer a danger to the community and that the interests of justice warrant a sentence reduction. If the movant meets those two criteria, IRAA directs courts to resentence them to a reduced term consistent with one of three general sentencing schemes, whichever was "applicable" at their original sentencing: the indeterminate sentencing scheme codified at D.C. Code § 24-403, the determinate sentencing scheme codified at Section 24-403.01, or the youth sentencing scheme codified at Section 24-903. The parties and the trial court agreed that the indeterminate sentencing scheme was applicable here in light of when Walls was originally sentenced.

The trial court partially granted Walls's request for IRAA relief. It determined that while Walls was no longer dangerous and that the interests of justice favored a sentence reduction, he was not "ready" for immediate release and "would benefit from further time and support within the correctional system." The trial court then reduced Walls's indeterminate sentence by ten years—from forty-five years to life

to thirty-five years to life—thereby making him eligible for parole in 2027, at which point his release would be up to the Parole Commission.

We vacate the trial court's order and remand the case for further consideration. In our view, the trial court erred in two important respects.

First, the trial court's sole articulated basis for rejecting Walls's request for immediate release was that he "would benefit from" more "time and support" in prison. This basis for further incarceration—that it is for the prisoner's own good—is inconsistent with IRAA's directives to trial courts. The non-dangerous who have otherwise checked IRAA's boxes cannot be further imprisoned because, in a trial judge's view, they would benefit from further imprisonment.

Second, the trial court imposed an illegal sentence under IRAA when it reduced Walls's indeterminate sentence for first-degree murder to twenty years to life, accounting for the bulk of his sentence. Indeterminate sentences, now largely an anachronism in the District, involve a minimum and a maximum sentence with parole eligibility lying in the delta between them, so that release is dependent upon the Parole Commission's independent judgment in that delta. Section 24-403 makes clear that "[w]here the maximum sentence imposed is life imprisonment, a minimum sentence shall be imposed which shall not exceed 15 years imprisonment." The

twenty-year minimum sentence that the trial court imposed went five years beyond that maximum-minimum sentence, and was therefore unlawful.

We thus vacate and remand the case for the trial court to (1) reconsider the extent of Walls's sentence reduction, disabused of any consideration that imprisonment rather than release would be most beneficial to him; and (2) modify Walls's sentence in accordance with the indeterminate sentencing guidelines.

## I. Facts

More than thirty years ago, when Walls was eighteen years old, he and a friend were hanging out in front of an apartment building when two other teenagers approached them. After some heated words, Walls pulled out a gun and shot at the two teenagers, one of whom was shot in the foot and escaped while the other was shot in the back and died. Five years later, a jury convicted Walls of first-degree murder, assault with intent to kill, and possession of a firearm during a crime of violence. Walls received consecutive indeterminate sentences of thirty years to life, ten to thirty years, and five to fifteen years, respectively, for those three convictions. We affirmed his convictions on direct appeal. *Walls v. United States*, 773 A.2d 424 (D.C. 2001).

Walls sought a sentence reduction resulting in his immediate release under IRAA in 2021. *See* D.C. Code § 24-403.03. Walls met the threshold eligibility criteria for IRAA relief because he committed his crime when he was under the age of twenty-five and had served more than fifteen years in prison. *See id.* § 24-403.03(a)(1). IRAA requires a trial court to "reduce a term of imprisonment" for an eligible defendant if they are no longer "a danger to the safety of any person or the community" and "the interests of justice warrant a sentence modification." *Id.* § 24-403.03(a)(2). In assessing those questions, the trial judge must consider ten statutory factors, plus an eleventh catch-all factor accounting for "[a]ny other information the court deems relevant." *Id.* § 24-403.03(c)(1)-(11).[1] The extent of

---

[1] The ten factors are:

(1) The defendant's age at the time of the offense;

(2) The history and characteristics of the defendant;

(3) Whether the defendant has substantially complied with the rules of the institution to which the defendant has been confined, and whether the defendant has completed any educational, vocational, or other program, where available;

(4) Any report or recommendation received from the United States Attorney;

(5) Whether the defendant has demonstrated maturity, rehabilitation, and a fitness to reenter society sufficient to justify a sentence reduction;

(6) Any statement, provided orally or in writing, provided pursuant to § 23-1904 or 18 U.S.C. § 3771 by a victim of the offense for which the defendant is imprisoned, or by a family member of the victim if the victim is deceased;

the resulting sentence reduction is guided by those same factors. *See Doe v. United States*, 333 A.3d 893, 904-05 (D.C. 2025).

In support of his IRAA motion, Walls provided a thorough social history detailing his experience growing up in poverty with an incarcerated father and with both parents suffering from addiction during the height of the crack cocaine epidemic. He experienced neglect, suffered physical abuse from his mother, and lived in "constant fear" of the crime taking place in his neighborhood. Walls also submitted a letter to the court expressing his remorse and "tak[ing] full responsibility" for his crime, as well as multiple letters of support from friends, family, and employers who promised to help Walls upon his release from prison. Walls further described the personal growth he experienced during his incarceration;

_____

(7) Any reports of physical, mental, or psychiatric examinations of the defendant conducted by licensed health care professionals;

(8) The defendant's family and community circumstances at the time of the offense, including any history of abuse, trauma, or involvement in the child welfare system;

(9) The extent of the defendant's role in the offense and whether and to what extent another person was involved in the offense;

(10) The diminished culpability of juveniles and persons under age 25, as compared to that of older adults, and the hallmark features of youth, including immaturity, impetuosity, and failure to appreciate risks and consequences, which counsel against sentencing them to lengthy terms in prison, despite the brutality or cold-blooded nature of any particular crime, and the defendant's personal circumstances that support an aging out of crime.

while acknowledging that he committed several disciplinary infractions, he highlighted his lack of infractions since 2018 and the fact that he has completed over 1,500 hours of educational, vocational, and mental health programming. Among other details, Walls also noted how despite a long struggle with substance abuse which began when he was just fifteen years old, he achieved and had maintained his sobriety since 2019.

The government conceded that Walls met the threshold eligibility criteria for IRAA relief but opposed his motion. The government focused its opposition on Walls's spotty disciplinary record in prison. It highlighted Walls's forty-seven disciplinary infractions, including one for assault with serious bodily injury in 2018. This incident involved Walls stabbing another inmate with a "homemade" weapon, which resulted in the inmate's hospitalization.

The trial court held an evidentiary hearing on Walls's IRAA motion. Maureen Baird, a former Bureau of Prisons warden, testified on Walls's behalf regarding his disciplinary record. The court also heard testimony from Walls's sister and Walls himself. Walls expressed remorse for his crimes, and described how he "started utilizing the prison for what it offered" by pursuing drug treatment, psychological treatment, meditation, reading, and other programming.

The trial court issued a written order on Walls's IRAA motion, in which the court found six of the statutory factors weighed in favor of a sentence reduction, with the government's opposition to IRAA relief being the only factor that weighed against a sentence reduction. We do not recount the trial court's analysis on each of the factors in detail, but note the parts of the order relevant to this appeal.

As for IRAA factor three—which relates to whether Walls "substantially complied" with prison rules and completed programming, *id.* § 24-403.03(c)(3)— the court found this factor "ultimately" weighed in Walls's favor despite his forty-seven infractions, which included the 2018 incident where he stabbed another incarcerated person. The court found that Walls's testimony about the incident "lacked insight" and said the stabbing was "not an act of someone who has been fully rehabilitated," but praised Walls's clear turnaround since then. Walls's "considerable change" entailed a multi-year commitment to becoming sober, 1,500 hours of educational and rehabilitative programming, and substantial compliance with prison rules since 2019. The court characterized Walls as someone who has "taken impressive strides" in recent years and "is focused on obeying the rules and avoiding impulsive and immature behavior."

As for IRAA factor ten—which relates to the "diminished culpability of juveniles and persons under age 25," *id.* § 24-403.03(c)(10)—the court found this

factor weighed in favor of a sentence reduction because, due to "[t]he factual circumstances of the case," Walls was "more vulnerable or susceptible to negative influences and outside pressures, including peer pressure[,] and was likely driven by anger, impulsivity, and an inability to consider the consequences of his actions."

In its discussion of the remaining IRAA factors, the trial court repeatedly acknowledged Walls's traumatic and difficult childhood, and praised the "strong support system" that Walls had built and maintained while incarcerated. The court further sympathized with the abuse that Walls had experienced while incarcerated and reiterated its praise for Walls's successful journey towards sobriety.

Having weighed the IRAA factors in Walls's favor, the trial court determined that Walls "met his burden of establishing that he is no longer a danger to society" and that "a reduction of his sentence would be in the interests of justice," meaning he was entitled to a sentence reduction under the statute. Instead of granting Walls his immediate release, however, the court reduced the sentence on his first-degree murder conviction from thirty years to life to twenty years to life, thereby reducing his cumulative sentence from forty-five years to life down to thirty-five years to life. That moved up Walls's parole eligibility date to 2027. The court reasoned that while Walls had made "considerable progress," it did "not believe that [Walls] is ready for

immediate release and would benefit from further time and support within the correctional system." Walls now appeals.

## II. Analysis

We review the trial court's ultimate IRAA determination for an abuse of discretion and any subsidiary legal rulings de novo. *Doe*, 333 A.3d at 898. In assessing whether the trial court acted within its discretion, we consider whether the court "failed to consider a relevant factor, whether [it] relied upon an improper factor, and whether the reasons given reasonably support [its] conclusion." *Bishop v. United States*, 310 A.3d 629, 641 (D.C. 2024). A court "by definition abuses its discretion when it makes an error of law." *Id.*

Walls argues that the trial court abused its discretion by (1) hinging its decision regarding the extent of Walls's sentencing reduction on the reasoning that Walls "would benefit" from more "time and support" in prison; (2) imposing a minimum sentence in excess of what the indeterminate sentencing scheme allows; and (3) failing to properly weigh IRAA's tenth factor. We address these arguments in turn.

*A. The trial court's decision to only partially reduce Walls's sentence
is reviewable on appeal and constituted an abuse of discretion*

Walls first argues that the trial court relied upon an improper basis when it denied his request for immediate release. Before we address the merits of this argument, we must first consider the government's contention that a trial court's determination of how much to reduce a sentence by—as opposed to the determination of whether to grant a sentence reduction at all—is a discretionary decision "beyond appellate review."[2] For the following reasons, we reject the government's view.

### 1. The trial court's determination of the proper extent of a sentence reduction under IRAA is reviewable on appeal

The government first points to IRAA's subsection (e)(1), which describes how trial courts must "resentence[]" movants under the indeterminate, determinate, or youth sentencing regimes. *Id.* § 24-403.03(e)(1). According to the government, this provision indicates that "resentencing" is a distinct and open-ended analysis when compared to the prior determination of whether to grant sentencing relief in the first

---

[2] The government concedes that a determination as to the extent of a sentence reduction under IRAA is "subject to a few statutory and constitutional provisions" and is reviewable at least with respect to D.C. Code § 24-403.03(e) and the Eighth Amendment. More pointedly, it concedes that we can review Walls's particular argument that he received an illegal sentence when the trial court resentenced him to twenty years to life on the first-degree murder charge.

place based on IRAA's eleven enumerated factors. Because of this and the fact that sentence lengths are generally not reviewable on direct appeal, *see, e.g.*, *Matter of L.J.*, 546 A.2d 429, 434 (D.C. 1988) (noting that this court declines "to review on appeal sentences which are within statutory limits, upon the ground that such sentences are too severe"), the government argues that a court's IRAA resentencing determination is generally unreviewable.

This argument is at odds with this court's recent analysis in *Doe*. We said in *Doe* that the issues of "whether to reduce the sentence" and "the extent of the sentence reduction" in IRAA cases "are two sides of the same coin," both guided by the same eleven enumerated IRAA factors. 333 A.3d at 905. In reaching this conclusion, we emphasized that the predominate language in IRAA establishes a one-step process—involving the eleven enumerated factors which guide the dangerousness and interests-of-justice criteria—for trial courts to follow when deciding the overall question of what relief they are required to grant, if any. *Id.* at 904-05 ("[T]he trial court 'shall' reduce an eligible movant's sentence" under that singular rubric (quoting D.C. Code § 24-403.03(a)(2))).

*Doe* particularly rejected the government's reliance on IRAA's subsection (e)(1) to argue otherwise. We explained that the D.C. Council's purpose in creating subsection (e)(1) was not to provide trial courts with unreviewable resentencing

authority, but instead to ensure that successful movants are resentenced in accordance with the Ex Post Facto Clause of the U.S. Constitution. *Id.* at 905-06. As a result, subsection (e)(1) requires trial courts to follow the general strictures of the relevant sentencing regime when determining the nature and extent of the sentence reduction (i.e., whether the sentence will include a range of years or will be a fixed term). Subsection (e)(1) does not, however, turn IRAA into a "two-step process" with a "divorced" and freewheeling resentencing step at the end of the analysis. *Id.* at 904-05. We therefore reject the government's argument that a trial court's determination of the extent of a sentence reduction is a distinct discretionary choice that is unreviewable on appeal.

Two further points support our conclusion that Walls's present claims are reviewable on appeal. First, the government's argument against reviewability would severely undercut IRAA's central purpose, which is to provide people who were "less developmentally culpable when they committed their crimes" a "meaningful opportunity" for release. *Long v. United States*, 312 A.3d 1247, 1260 (D.C. 2024) (internal quotation marks omitted); *see also Williams v. United States*, 205 A.3d 837, 846 (D.C. 2019). If trial courts, after concluding that a movant is entitled to IRAA relief, could comply with the statute's mandate by simply reducing their sentence by a single day—and thereby insulate themselves from appellate review—IRAA would be a hollow shell. Adoption of the government's position would leave IRAA close

to "inoperative," *Richman Towers Tenants' Ass'n, Inc. v. Richman Towers LLC*, 17 A.3d 590, 615 (D.C. 2011) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)), and at the very least ineffectual in achieving its stated legislative objective. Accordingly, even if *Doe* did not squarely resolve the reviewability question now before us, we would reject the government's argument as inconsistent with IRAA's central purpose.

Second, as this court previously noted in *Williams*, IRAA's requirement that a trial court issue a written opinion contemplates and is a means of "ensur[ing] the effectiveness of appellate review." 205 A.3d at 848; D.C. Code § 24-403.03(b)(4) ("The court shall issue an opinion in writing stating the reasons for granting or denying the application under this section, but the court may proceed to sentencing immediately after granting the application."). This requirement applies to a trial court's decision on a movant's whole "application," indicating that IRAA anticipates appellate review with respect to a movant's request for a sentence reduction to a particular term length (and not just their request for a sentence reduction in general).[3]

---

[3] The government suggests that the language in subsection (b)(4) permitting trial courts to "proceed to sentencing immediately after granting the application" places the determination of the extent of a sentence reduction beyond the scope of the written opinion requirement. But this would be at odds with the structure and purpose of the statute. *See Doe*, 333 A.3d at 904-05 (holding that the questions of whether to reduce a sentence and by how much are considered together). Rather,

The government's position, conversely, would gut that clearly anticipated review except as to a threshold question that has roughly no bearing on the extent of any relief that is ultimately granted; under its view, a day's reduction in a hundred-year sentence, even for the worthiest IRAA applicant, would be essentially unreviewable on appeal.

Therefore, in accordance with *Doe* and IRAA's foundations, we hold that the whole of IRAA resentencing determination is subject to appellate review. We now proceed to review the trial court's particular resentencing decision.

<u>2. The trial court improperly relied on a rationale that is
untethered from and inconsistent with IRAA's enumerated factors</u>

Walls argues that the trial court abused its discretion when it denied his request for immediate release on the basis that he "would benefit from further time and support within the correctional system." He specifically asserts that IRAA does not direct or permit trial courts to take such a factor into account. We agree.

---

this language reads as allowing trial courts to order a sentence reduction from the bench prior to issuing a full written opinion. This has been a fairly common practice in the Superior Court. *See, e.g., id.* at 897 (oral ruling preceded written ruling); *Riley v. United States*, No. 24-CO-0100, 2025 WL 1830780, at *2 (D.C. July 3, 2025) (same).

IRAA does not permit a court to continue incarcerating a prisoner who qualifies for IRAA relief—establishing that he is non-dangerous and has served the requisite fifteen years or more imprisoned—on the grounds that further imprisonment is in their own interests. For starters, as we recently made clear in *Doe*, the determination of the extent of a sentence reduction under IRAA must be tethered to the statute's eleven enumerated factors. 333 A.3d at 910 (Under IRAA, trial court's may not "engage in an unconstrained interests-of-justice inquiry untethered from [IRAA's] enumerated factors."); *see also Welch v. United States*, 319 A.3d 971, 975-77 (D.C. 2024) (trial court "appropriately considered" the IRAA factors when determining that a "limited reduction" in the movant's sentence was proper rather than immediate release). And a trial court's view that the inmate would benefit from further imprisonment is not a consideration that fits within any of those factors. So as in *Doe,* the trial court's reliance upon considerations disconnected from IRAA's eleven enumerated factors was an abuse of discretion. *See* 333 A.3d at 906 ("[A] trial court is prohibited from considering the seriousness of the defendant's underlying offenses in isolation and outside the framework of the enumerated factors.").

The government does not meaningfully counter this point. It does not suggest that an inmate's prospects for benefiting from further incarceration is a consideration that fits within any of the eleven enumerated IRAA factors. It instead advances only

the argument we rejected in *Doe*: that IRAA's factors relate only to *whether* an inmate gets a sentence reduction, while different considerations inform the extent of that reduction. Again, that argument is now foreclosed. *See id.* at 904 ("The IRAA does not create a two-step process whereby the trial court first decides whether to reduce the sentence based on an application of the IRAA factors and then determines the extent of the reduction based on a separate statutory or other resentencing framework.").

The only IRAA factor that seems to be a potential candidate for countenancing the trial court's reasoning is factor five, which requires the court to consider "[w]hether the defendant *has demonstrated* maturity, rehabilitation, and a fitness to reenter society." D.C. Code § 24-403.03(c)(5) (emphasis added). But that factor clearly contemplates a backward-looking inquiry into how far the defendant has come; it does not ask what future benefits incarceration would yield for him. It would also be perverse to hold a defendant's prospects for further improvement while incarcerated as a point against his release. It would not comport with any sense of justice to say the non-dangerous and steadily improving inmate must remain imprisoned because of his continued strides, while the non-dangerous inmate whose improvements have stalled out should go free.

Putting aside that the trial court's ostensibly compassionate rationale for denying immediate release was untethered from IRAA's enumerated factors, it also evinces a generally outdated and impoverished view that incarceration can be justified based on its benefits to the prisoner. There is little reason to think that Walls, who the trial court found "has a strong support system in place" outside of prison, could not improve himself more if released, rather than being kept behind bars, and the trial court did not offer any. A set of Supreme Court cases illustrates the point in somewhat analogous settings.

In *Tapia v. United States*, the Court unanimously held that under federal statutory law, a defendant's sentence could not be increased to facilitate their enrollment in a drug treatment program. 564 U.S. 319, 327, 335 (2011). In reaching this conclusion, the Court noted that Congress had rejected the "disfavor[ed]" rehabilitative model of sentencing back in the 1980s, and subsequently made clear through newer laws that "imprisonment is not an appropriate means of promoting correction and rehabilitation." *Id.* at 324-26 (quoting 18 U.S.C. § 3582(a)); *see also* 1 Wayne R. LaFave, Substantive Criminal Law § 1.5(b) (3d ed. 2003) (describing the same shift in the "theoretical underpinnings" for incarceration). In *Pepper v. United States*, decided the same term as *Tapia*, the Court similarly held that evidence of a defendant's post-sentencing rehabilitation could be used to *decrease* their prison sentence at resentencing, but not to increase it. 562 U.S. 476, 490-93 (2011). *Pepper*

reasoned that evidence of such post-sentencing rehabilitation could come into consideration under a court's evaluation of "the history and characteristics of the defendant," among other factors. *Id.* at 491 (quoting 18 U.S.C. § 3553(a)). The *Pepper* and *Tapia* duo echo several themes from Justice Marshall's plurality opinion in *Powell v. Texas*, which expressed serious concern about confining "indigent alcoholics" under the auspices of providing them with needed medical treatment. 392 U.S. 514, 528 (1968). To do this, Justice Marshall reasoned, would commit them to incarceration in a "slightly higherclass jail[]" until they are "cured," which could amount to an indefinite period of time untethered from objective constraints and subject to the whims of supervisory authorities. *Id.* at 528-29.

The throughline of these cases is a simple and powerful one: While we applaud inmates' successful rehabilitation efforts, prisons are not well tailored to rehabilitative goals.[4] And whatever their effectiveness at furthering those goals, an

---

[4] There is empirical force behind this conclusion as well as legal. Studies on the relationship between sentence length and recidivism have "yielded mixed results, with some analyses identifying a positive general deterrent effect (preventing community crime) but the majority indicating marginal effects at best, or no effects when compared to shorter sentences." Roger Pryzbylski et al., *The Impact of Long Sentences of Public Safety: A Complex Relationship*, 36 Fed. Sent'g Rep. 81, 84 (2023). In fact, "[n]early half a dozen recent studies . . . report no relationship between longer sentence length and recidivism." *Id.* at 85. The D.C. Council has also noted that in the first three and a half years of IRAA's existence, not a single recipient of relief was reconvicted after release, which is similar to the experience

inmate's prospect for further rehabilitation is a pretty lousy and potentially limitless reason to further incarcerate them. A telling fact from the record in this case is that Walls has attempted to partake in more prison programming but has at least once been denied or placed on a waitlist. In 2022, Walls sent a note asking a prison staff member to "reconsider" their initial decision to not allow him into the "Challenge Program," to which Walls received a response that he was being placed on a waitlist for the program and should "be patient." The trial court's reasoning would seem to permit it to keep Walls incarcerated for some additional years simply because, through no fault of his own, the Bureau of Prisons has yet to enroll Walls in a program that he would seemingly benefit from and has sought to avail himself of.

We thus conclude that the trial court "relied upon an improper factor," *Bishop*, 310 A.3d at 641, and abused its discretion when it relied upon the notion that further imprisonment would be a benefit to Walls.

---

of other states "which have all experienced little to no recidivism among individuals resentenced after serving extreme sentences." Committee Report, Report on Bill No. 23-0127 before the Committee on the Judiciary and Public Safety, Council of the District of Columbia at 17 (Nov. 23, 2020).

*B. The trial court's new sentence was illegal*

Walls's illegal sentence argument—his second main challenge to the trial court's decision below—relies on subsection (e)(1) of IRAA, which we discussed in the preceding section. To recap, that provision says that "[a]ny defendant whose sentence is reduced . . . shall be resentenced pursuant to § 24-403, § 24-403.01, or § 24-903, as applicable." D.C. Code § 24-403.03(e)(1). These three respective provisions are the District's indeterminate sentencing regime, determinate sentencing regime, and youth sentencing statute, among which courts must apply "the sentencing regime that originally governed [the IRAA movant's] sentence." *Williams*, 205 A.3d at 848 (citing D.C. Code § 24-403.03(e)). Walls contends that the trial court, after determining that he was entitled to relief, did not properly resentence him pursuant to the indeterminate sentencing scheme.

As discussed above, the D.C. Council's overarching purpose in enacting D.C. Code § 24-403.03(e)(1) was to ensure that successful movants are resentenced in accordance with the Ex Post Facto Clause, *Doe*, 333 A.3d at 905-06, which the provision accomplishes by mandating that movants "convicted of a crime that was committed before August 5, 2000, must have an indeterminate (parole) sentence imposed," Comprehensive Youth Justice Amendment Act of 2016, Bill No. 21-0683, Amendment #1, (Nov. 1, 2016). Thus, the three statutes cited in subsection

(e)(1) are applicable in the IRAA context to the extent they impose a sentence of a range of years or a fixed term. To the extent the statutes cited in subsection (e)(1) provide substantive factors for courts to weigh in determining the length of a sentence, however, they are completely irrelevant to an IRAA proceeding. *See Doe*, 333 A.3d at 905 ("[T]he trial court treated resentencing as a distinct step divorced from the IRAA factors and, in so doing, applied an unrelated statute and an inapplicable legal framework.").

The parties agree, as the trial court concluded, that the indeterminate sentencing scheme codified at Section 24-403 applied at Walls's resentencing. That statute imposes various guidelines on trial courts' ability to impose a sentence range, requiring in relevant part that "[w]here the maximum sentence imposed is life imprisonment, a minimum sentence shall be imposed which shall not exceed 15 years imprisonment." Section 24-403 contains no other qualifications or caveats to this particular language, and does not refer readers to any other statutory provisions for purposes of interpreting it. The trial court here ran afoul of this statutory restriction that Section 24-403 imposes on indeterminate sentences. When resentencing Walls on his first-degree murder conviction, the court imposed a maximum sentence of life imprisonment while also imposing a minimum of twenty years. That minimum was five years longer than permitted by the plain language of the statute and was legal error.

The government raises a few counterpoints. It first argues that the indeterminate sentencing regime codified at Section 24-403 is "applicable" to Walls's resentencing, but only "to [a] point"—at the time of Walls's crime, D.C. had a sentencing statute specific to first-degree murder that would have applied at his original sentencing and they say should "override[]" Section 24-403 in the IRAA resentencing context. The government specifically points us to D.C. Code § 22-2404 (1992), the precursor to D.C. Code § 22-2104, which says that "[n]otwithstanding any other provision of law, a person convicted of first-degree murder and upon whom a sentence of life imprisonment is imposed shall be eligible for parole only after the expiration of 30 years from the date of the commencement of the sentence."[5] So the argument goes that the trial court's resentencing

---

[5] The government asserts that this thirty-year mandatory minimum was incorporated into the sentencing regime governing Walls's original sentence. For accuracy's sake, this does not appear to be true—D.C. increased its mandatory minimum sentence for first-degree murder from twenty years to thirty years effective September 26, 1992, a little more than one month after Walls's offense, which took place on August 9, 1992. *See* First Degree Murder Amendment Act of 1992, D.C. Law 9-153, § 2, 39 D.C. Reg. 3868 (previously codified at § 22-2404(b)); Pub. L 87-423, § 801, 76 Stat. 46 (1962) (prior twenty-year mandatory minimum). This increased mandatory minimum would have been inapplicable at Walls's sentencing as an ex post facto law. *See Solomon v. United States*, 120 A.3d 618, 621 (D.C. 2015) (An impermissible law under the Ex Post Facto Clause includes any "law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed."). It thus appears that a twenty-year mandatory minimum applied to Walls's sentence for first-degree murder, and the original sentencing court decided within its discretion to impose a greater minimum of thirty

determination (a new sentence of twenty years to life) was permissible—with Section 24-403 overridden and out of the picture, there was no relevant provision saying that the minimum sentence could not exceed fifteen years.[6]

But the government's interpretation is simply incompatible with IRAA's plain text. Subsection (e)(1) says that movants "shall be resentenced pursuant to § 24-403, § 24-403.01, or § 24-903, as applicable." That language does not instruct courts to look at any offense-specific sentencing statutes.[7] And when a statute contains a list of "associated" items (e.g., a group of sentencing statutes), as a matter of statutory interpretation, we generally conclude that "the exclusion of others is implied." *J.P. v. District of Columbia*, 189 A.3d 212, 218 (D.C. 2018) (internal quotation marks omitted). The D.C. Council, of course, knew about the existence of Section 22-2104—the current statute governing sentencing for first-degree murder—and other offense-specific sentencing statutes when it enacted IRAA, and apparently

---

years. But this does not affect the government's legal argument for the purposes of this IRAA appeal, the aim of which is to point us away from the "shall not exceed 15 years" language in Section 24-403 and towards a statute that does not contain such language (i.e., either version of the first-degree murder sentencing statute).

[6] If this thirty-year mandatory minimum applied as the government argues, the trial court would have been empowered under IRAA to impose a lesser minimum sentence of twenty years, per D.C. Code § 24-403.03(e)(2).

[7] In addition to D.C. Code § 22-2104, these statutes include § 22-2106 (mandatory life without the possibility of parole for the murder of law enforcement officers) and § 22-3153 (mandatory life without the possibility of parole for acts of terrorism).

chose not to include them as provisions applicable to IRAA resentencings.  *See* Comprehensive Youth Justice Amendment Act of 2016, Report on Bill 21-0683 before the Committee on the Judiciary, Council of the District of Columbia, at 12 n.57 (Oct. 5, 2016) (citing D.C. Code § 22-2104 while explaining the background for IRAA); *Scholtz P'ship v. D.C. Rental Accommodations Comm'n,* 427 A.2d 905, 916 (D.C. 1981) ("[T]he legislature is presumed to know [the] law.").  We cannot simply read "and also § 22-2104" into IRAA's mandate, as the government would have us do.

The government further relies on *Bryant v. Civiletti*, a case where the D.C. Circuit held that the mandatory minimum in D.C.'s first-degree murder sentencing statute (now Section 22-2104) should apply to the sentencing of a first-degree murder defendant instead of the mandatory minimum present in D.C.'s general indeterminate sentencing statute (now Section 24-403).  663 F.2d 286, 292 (D.C. Cir. 1981) ("Special statutes prevail over general statutes.").  We have no issue with *Bryant*'s reasoning to the extent it describes what should happen at a typical sentencing that takes place after a trial or guilty plea.  But *Bryant* is irrelevant here because it did not concern the new and unique context that IRAA proceedings present.  Passed in 2016 and modified since then, IRAA is a second-look statute that creates a distinct relief mechanism for people who were incarcerated when they were teenagers or young adults.  *See* Incarceration Reduction Amendment Act, D.C. Law

21-238, §§ 301-306, 64 D.C. Reg. 3959 (eff. Apr. 4, 2017). And within this mechanism, the statute directs trial courts towards the overarching guidelines of the general indeterminate sentencing scheme, *not* the first-degree murder sentencing statute. As such, we do not find *Bryant* persuasive with respect to IRAA proceedings.

The government also advances what amounts to an absurdity argument. *See, e.g.*, *Booz Allen Hamilton Inc. v. Off. of Tax & Revenue*, 308 A.3d 1205, 1212 (D.C. 2024) (Courts will look beyond the plain language of a statute "in extraordinary cases in which the plain language would lead to absurd results."). Not applying the first-degree murder sentencing statute in the IRAA context, it says, would lead to the absurd result that first-degree murderers—generally viewed as the worst offenders in the eyes of the law—would get what amounts to favorable treatment. First-degree murderers with indeterminate sentences with a maximum term of life imprisonment will invariably be parole eligible if they qualify for IRAA relief because their minimum term could be no more than 15 years, which is the minimum term of incarceration before one is even eligible for IRAA relief. Conversely, a defendant who is serving a determinate thirty-year sentence for distribution of a controlled substance could be resentenced to a twenty-year term, leaving them worse off than the murderer, or so the argument goes.

This concern is exaggerated and does not approach an absurdity. To become eligible for IRAA relief in the first place, in addition to being incarcerated for fifteen years, IRAA movants must prove that they are no longer dangerous to the community and that a sentence reduction would be in the interests of justice—so in no sense do first-degree murderers with indeterminate sentences automatically become parole eligible after fifteen years. Nor do we not think it is absurd or even surprising that the D.C. Council would have wanted every IRAA movant who meets the statutory requirements for relief and is subject to an indeterminate sentence to at least be parole eligible. It is also far from obvious that a sentence of fifteen years to life—with one's potential release left to the uncertainties of the Parole Commission's discretion—is more desirable than a set term of twenty or thirty years, so that premise of the government's absurdity argument is rather dubious.

Still, with all that said, we can agree with the government that it is a little odd that any defendant with a top-end life sentence under the indeterminate scheme can receive a minimum of no more than fifteen years, whereas defendants serving determinate sentences for less serious crimes could be resentenced to a set term of years that is more than that. But that oddity stems principally from the contrasting features of the now-outdated indeterminate sentencing scheme and the more modern determinate sentencing scheme—not from any absurdity in IRAA itself. The text of IRAA is perfectly clear that Walls's minimum sentence could be no more than

fifteen years, in light of his lifetime maximum sentence, and the slight curiosity outlined above does not constitute "extraordinary" circumstances warranting a departure from that plain text. *Booz Allen Hamilton Inc.*, 308 A.3d at 1212.

### C. Walls's remaining arguments are unavailing

Walls also contends that the court committed legal error in failing to immediately release him under IRAA when it found he was no longer dangerous and that a sentence reduction was in the interests of justice under Section 24-403.03(a)(2). He specifically posits that it was an "error of law" to "delegate[]" to the Parole Commission, by moving up his parole eligibility date, the ultimate decision as to the length of his incarceration.

Our case law is clear, however, that "a successful IRAA motion may (but need not) result in a prisoner's immediate release from incarceration." *Long*, 312 A.3d at 1260; *see also Doe*, 333 A.3d at 904 n.9. After all, "IRAA explicitly permits trial judges to '*reduce*' a defendant's sentence." *Welch*, 319 A.3d at 976 n.3 (quoting D.C. Code § 24-403.03(a)) (emphasis added). To be sure, we have highlighted how IRAA and parole are distinct processes—"[t]he two mechanisms are motivated by different policy considerations, operate under different procedures, and achieve different objectives." *Long*, 312 A.3d at 1259-61. But we have also held that it is not per se improper to reduce a person's sentence under IRAA by making them

parole eligible, at least when a movant has not presented any evidence that future parole applications would be futile (thus keeping them with a "de facto life sentence" and rendering the IRAA process a nullity). *See Welch*, 319 A.3d at 975-76 & n.3 (upholding decision that made movant immediately eligible for parole instead of immediately releasing them). As in *Welch*, Walls has not presented such evidence, and we cannot hold that the trial court's decision to make him parole eligible was improper in this regard.

Finally, Walls makes two arguments with respect to the trial court's analysis of IRAA factor ten. First, he notes that the trial court did not rely on the then-current version of factor ten, because the court omitted IRAA's then-recently added directive to consider "the defendant's personal circumstances that support an aging out of crime." D.C. Code § 24-403.03(c)(10). Walls says this caused the trial court to "fail[] to undertake the required factual inquiry." Second, he contends the trial court erred by noting in its analysis of factor ten that "[t]he factual circumstances of the case" show that his crime "was likely driven by anger, impulsivity, and an inability to consider the consequences of his actions." He argues that, per *Bishop*, trial courts may not consider case-by-case how "the hallmarks of youth played a role in the underlying offense." 310 A.3d at 647 (internal quotation marks omitted).

Walls is correct that the trial court did not quote the newly added "aging out" language from factor ten, which became effective one month before Walls filed his motion in May 2021. *See* Omnibus Public Safety and Justice Amendment Act of 2020, D.C. Law 23-274, § 601, 68 D.C. Reg. 47921 (Apr. 27, 2021). But we are dubious that the trial court committed the *Bishop*-based error that Walls attributes to it, and in any event, neither of these alleged errors prejudiced Walls. The trial court resolved factor ten in Walls's favor—and the second claimed error actually inured to his benefit—so that any errors were harmless. *See Doe*, 333 A.3d at 912 (finding consideration of improper factors under IRAA harmless).

The first error was a purely semantic misstep. While the trial court imprecisely articulated the current language of factor ten, the court did exactly what the substance of that factor commands. The court's order discussed various facts that suggest Walls has "ag[ed] out" of crime, acknowledging that Walls has made "impressive steps towards maturity," has become "focused on obeying the rules and avoiding impulsive and immature behavior," and has a "strong" re-entry plan. As to the second alleged error, the court considered particular *mitigating* characteristics of Walls's offenses that gave the impetuosity of his youth especially strong explanatory force, making it less likely he would slip back into crime if released. We do not mean to suggest that was any kind of error, contrary to Walls's argument—*Bishop*'s overarching holding was that "factor ten must weigh

categorically in favor of the movant," 310 A.3d at 645, and the trial court acted consistent with that holding when it determined without qualification that the substance of factor ten weighed towards relief. But if it had been some kind of error—given *Bishop*'s command that trial court "may not consider the degree to which 'the hallmark features of youth' played a role in the underlying offense"—it is not one we would hear Walls to complain about because it benefited him. Again, the court ultimately found without qualification that factor ten weighed in Walls's favor and determined that he was entitled to a sentence reduction, so that both of the errors above were undoubtedly harmless.

## III. Conclusion

We vacate the trial court's order and remand the matter for further proceedings consistent with this opinion.

*So ordered.*